Jacob Shidaev, Esq. (SBN: 343616)                                    DETAINED

LAW OFFICES OF JACOB SHIDAEV

15250 Ventura Blvd, Suite PH 1220

Sherman Oaks, CA 91403

TEL: (424) 558 4141

FAX: (818) 273 5131

jacob@shidaev.com


Attorney for Respondent

## UNITED STATES DISTRICT COURT

## FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| **MOVLAEV, CHINGISKHAN**<br><br>**FILE NO:     A 246-744-846**<br><br><br><br>                                        Petitioner,<br><br>                        v.<br><br>MOISES BECERRA, in his official capacity as Field Office Director, San Francisco Field Office, United States Immigration and Customs Enforcement;<br>PATRICK J. LECHLEITNER, in his official capacity as Deputy Director and Senior Official Performing the Duties of the Director of U.S. Immigration and Customs Enforcement;<br>ALEJANDRO MAYORKAS, in his official capacity as Secretary of the Department of Homeland Security;<br>MERRICK GARLAND, in his official capacity as Attorney General of the United States;<br>                                        Respondents. | Case No. 3:24-cv-5016<br><br>**Petition for Writ of Habeas Corpus** |

1

2          **PETITION FOR WRIT OF HABEAS CORPUS**

3            **PURSUANT TO 28 U.S.C. § 2241**

4    Petitioner respectfully petitions this Honorable Court for a writ of habeas corpus to remedy

5    Petitioner's unlawful detention by Respondents as follows:

6                       **<u>INTRODUCTION</u>**

7    1.  Petitioner[1] is currently detained by Immigration and Customs Enforcement ("ICE") at the

8           Golden State Annex detention center pending removal proceedings.

9    2.  Petitioner has been detained in immigration custody since September 23, 2023, even though

10       no neutral decisionmaker—whether a federal judge or immigration judge ("IJ")—has

11       conducted a hearing to determine whether this lengthy incarceration is warranted based on

12       danger or flight risk.

13    3.  Petitioner's prolonged detention without a hearing on danger and flight risk violates the Due

14       Process Clause of the Fifth Amendment.

15    4.  Petitioner therefore respectfully requests that this Court issue a writ of habeas corpus

16       determining that Petitioner's detention is not justified because the government has not

17       established by clear and convincing evidence that Petitioner presents a risk of flight or

18       danger in light of available alternatives to detention and order Petitioner's release with

19       appropriate conditions of supervision if necessary, taking into account Petitioner's ability to

20       pay a bond.

21    5.  Alternatively, Petitioner requests that the Court issue a writ of habeas corpus and order

22       Petitioner's release within 30 days unless Respondents schedule a hearing before an IJ

23       where: (1) to continue detention, the government must establish by clear and convincing

24       evidence that Petitioner presents a risk of flight or danger, even after consideration of

25       alternatives to detention that could mitigate any risk that Petitioner's release would present;

---

[1] Petitioner respectfully requests that the Court use his initials, rather than his full last name, in any opinion in his case, as suggested by the Committee on Court Administration and Case Management of the Judicial Conference of the United States. *See* Memorandum Re: Privacy concern Regarding Social Security & Immigration Opinions (May 1, 2018), *available at* https://www.uscourts.gov/sites/default/files/18-cv-l-suggestion_cacm_0.pdf; *see also Jorge M.F. v. Jennings*, 534 F. Supp. 3d 1050 n.1 (N.D. Cal. Apr. 14, 2021).

and (2) if the government cannot meet its burden, the IJ shall order Petitioner's release on appropriate conditions of supervision, taking into account Petitioner's ability to pay a bond.

## **JURISDICTION**

6. Petitioner is detained in the custody of Respondents at the Golden State Annex detention center.

7. This action arises under the Due Process Clause of the Fifth Amendment of the U.S. Constitution. Jurisdiction is proper under 28 U.S.C. §§ 1331 (federal question), 2241 (habeas corpus); U.S. Const. art. I § 2 (Suspension Clause); and 5 U.S.C. § 702 (Administrative Procedure Act). This Court may grant relief under the habeas corpus statutes, 28 U.S.C. § 2241 et seq., the Declaratory Judgment Act, 28 U.S.C. § 2201 et seq., and the All Writs Act, 28 U.S.C. § 1651.

8. Congress has preserved judicial review of challenges to prolonged immigration detention. See *Jennings v. Rodriguez*, 138 S. Ct. 830, 839-841 (2018) (holding that 8 U.S.C. §§ 1226(e), 1252(b)(9) do not bar review of challenges to prolonged immigration detention); see also id. at 876 (Breyer, J., dissenting) ("8 U.S.C. § 1252(b)(9) . . . by its terms applies only with respect to review of an order of removal") (internal quotation marks and brackets omitted).

## **VENUE**

9. Venue is proper in this District under 28 U.S.C. § 1391 because at least one Respondent is in this District and because Petitioner is presently detained under the authority of the Director of the San Francisco ICE Field Office, a Respondent in this action.

10. The Golden State Annex detention center is operated by a private contractor and controlled by the San Francisco Field Office of ICE Enforcement and Removal Operations ("ERO"). The San Francisco Field Office of ICE ERO is responsible for carrying out ICE's detention operations at this detention center and for adjudicating requests for release from those detained there.

11. Respondent Acting or Current Director of the San Francisco ICE Field Office resides in this district for venue purposes because their official duties are performed in this district. See Doe v. Becerra, No. 5:23-cv-04767-PCP, 2023 WL 8307557, at *3–6 (N.D. Cal. Dec. 1, 2023) (San Francisco ICE Field Office Director is properly-named respondent in habeas

1    because they are "a local official who is both 'readily identifiable' and exercises 'immediate

2    control' over [petitioner's] detention"); Saravia v. Sessions, 280 F. Supp. 3d 1168, 1185

3    (N.D. Cal. 2017), aff'd sub nom. Saravia for A.H. v. Sessions, 905 F.3d 1137 (9th Cir. 2018)

4    ("Instead of naming the individual in charge of the contract facility—who may be a county

5    official or an employee of a private nonprofit organization—a petitioner held in federal

6    detention in a non-federal facility pursuant to a contract should sue the federal official most

7    directly responsible for overseeing that contract facility when seeking a habeas writ.");

8    Thongvilay v. ICE, No. 1:23-cv-01605-CDB (HC) (Nov. 16, 2023) (returning transferred pro

9    se habeas petition from E.D. Cal. to N.D. Cal. because in the immigration detention context,

10   habeas jurisdiction is proper in the Northern District); Singh Grewal v. Becerra, No. 23-CV-

11   03621-JCS, 2023 WL 6519272, at *3 (N.D. Cal. Oct. 4, 2023) ("The undersigned agrees

12   with all of the other judges in this District who have addressed the question and finds that the

13   director of the San Francisco Field Office is a proper respondent and therefore that there is

14   jurisdiction in this District even though Petitioner is detained in the Eastern District"

15   (emphasis added)). id. at *4 (collecting cases.[2]

16   **REQUIREMENTS OF 28 U.S.C. § 2243**

17   12. The Court must grant the petition for writ of habeas corpus or issue an order to show cause

18       ("OSC") to Respondents "forthwith" unless Petitioner is not entitled to relief. 28 U.S.C. §

19       2243. If the Court issues an OSC, it must require Respondents to file a return "within three

20       days unless for good cause additional time not exceeding twenty days is allowed." Id.

21       (emphasis added).

22   13. Courts have long recognized the significance of the habeas statute in protecting individuals

23       from unlawful detention. The Great Writ affords "a swift and imperative remedy in all cases

24       of illegal restraint or confinement." Fay v. Noia, 372 U.S. 391, 400 (1963) (emphasis added);

---

[2] See also I.E.S. v. Becerra, No. 23-CV-03783-BLF, 2023 WL 6317617, at *5 (N.D. Cal. Sept.27, 2023) (holding that San Francisco ICE Field Office Director is proper habeas respondent); Gomez v. Becerra, No. 23-CV-03724-JCS, 2023 WL 6232236, at *4 (N.D. Cal. Sept. 25, 2023)(same); id. at *4 n.2 (noting that "[a]t least fourteen judges in this district" have concluded the same, and not one has held otherwise); Martinez Leiva v. Becerra, No. 23-CV-02027-CRB, 2023 WL 3688097, at *4 (N.D. Cal. May 26, 2023) (same); Hernandez Gomez v. Becerra, No. 23-CV-01330-WHO, 2023 WL 2802230, at *3 (N.D. Cal. Apr. 4, 2023) (same); Pham v. Becerra, No.23-CV-01288-CRB, 2023 WL 2744397, at *4 (N.D. Cal. Mar. 31, 2023) (same); Salesh P. v.Kaiser, No. 22-CV-03018-DMR, 2022 WL 17082375, at *5 (N.D. Cal. Nov. 18, 2022) (same); Hilario Pankim v. Barr, No. 20-CV-02941-JSC, 2020 WL 2542022, at *4 (N.D. Cal. May 19,2020) (same).

1    see also Yong v. INS, 208 F.3d 1116, 1120 (9th Cir. 2000) (explaining that habeas statute

2    requires expeditious determination of petitions).

3

4                                    **PARTIES**

5    14. Petitioner is a noncitizen currently detained by Respondents pending ongoing removal

6        proceedings.

7    15. Respondent Secretary of the U.S. Department of Homeland Security ("DHS"), an agency of

8        the United States, is responsible for the administration of the immigration laws. 8 U.S.C. §

9        1103(a). They are a legal custodian of Petitioner. They are named in their official capacity.

10   16. Respondent Acting or Current Attorney General of the United States is the most senior

11       official in the U.S. Department of Justice ("DOJ"). They have the authority to interpret the

12       immigration laws and adjudicate removal cases. They delegate this responsibility to the

13       Executive Office for Immigration Review ("EOIR"), which administers the immigration

14       courts and the Board of Immigration Appeals ("BIA"). They are named in their official

15       capacity.

16   17. Respondent Acting or Current Field Office Director of the San Francisco ICE Field Office is

17       responsible for the San Francisco Field Office of ICE with administrative jurisdiction over

18       Petitioner's case. They are a legal custodian of Petitioner and are named in their official

19       capacity.

20   18. Respondent Acting or Current Director of ICE is responsible for ICE's policies, practices,

21       and procedures, including those relating to the detention of immigrants. They are a legal

22       custodian of Petitioner and are named in their official capacity.

23

24                            **STATEMENT OF FACTS**

25   19. Petitioner is a noncitizen who was detained by Respondents pending his removal

26       proceedings, which resulted in Petitioner's being granted asylum on February 12, 2024. The

27       Department of Homeland Security ("DHS") filed an appeal of the IJ's decision to the Board

28       of Immigration Appeals on March 11, 2024. Petitioner and Respondents filed their briefs on

29       April 16 and 17, 2024, respectively. The BIA dismissed the appeal, and the record was

30       remanded to the Immigration Judge for the purpose of allowing DHS the opportunity to

31       complete or update identity, law enforcement, or security investigations or examinations and

further proceedings. On July 25, 2024, DHS filed a motion to reconsider with the BIA, and the case was transferred back to BIA.

20. Petitioner has been detained in DHS custody since September 23, 2023.

21. Petitioner has not been provided a bond hearing before a neutral decisionmaker to determine whether their prolonged detention is justified based on danger or flight risk.

22. Pursuant to 8 U.S.C. § 1226(c), the Immigration Court lacks jurisdiction and authority to provide Petitioner with a bond hearing to determine whether Petitioner's detention is justified. There is no statutory or regulatory pathway for Petitioner to seek a bond hearing before a neutral decisionmaker.

23. Absent intervention by this Court, Petitioner cannot and will not be provided with a bond hearing by a neutral decisionmaker to assess the propriety of Petitioner's continued detention.

24. Additional facts that support Petitioner's entitlement to relief are that he is a husband and father with three young children, with the youngest at 10 months old and the oldest at 4 years of age. They have been struggling financially and emotionally for almost a year now. Petitioner has never been charged with any crime and has no criminal record. His family is being supported by friends and relatives while Petitioner remains detained. Detention of Petitioner has come at a great cost financially, emotionally, and physically for the Petitioner and his family. Additionally, Petitioner is detained unnecessarily at government expense and may continue to be detained for years.

25. Petitioner had requested bond hearings, and IJ refused to grant a bond hearing and subsequently denied bond based on lack of jurisdiction.

26. Petitioner wants to start his new life in the United States and be a law-abiding citizen. Petitioner wants to be there for his family financially, emotionally, and physically.

27. Petitioner should be released from detention based on several compelling grounds: petitioner has significant community support evidenced by multiple letters from U.S. citizens, including a U.S. citizen sponsor who has pledged to provide housing and assistance to Petitioner and his family at their residence in Porter Ranch, CA; additionally, letters from various community members (including a Deputy Officer, a Priest, and others) attest to his good moral character and strong ties to the community.

28. Petitioner has secured stable housing for himself and his family as evidenced by the lease agreement for an apartment in Carmichael, CA, valid through August 2024. Utility bills and other documents further corroborate his family's stable living situation. As a family man

with significant responsibilities towards his young family, his detention imposes undue
hardship on them as they rely heavily on his support and presence. Additionally, his sponsor
has assured that he will comply with all immigration appointments and court hearings,
ensuring his full cooperation with the legal process.

29. Given his strong community ties, stable housing, and family responsibilities, Petitioner is not
a flight risk. His commitment to comply with all legal requirements further reduces any such
risk. In light of these points, I respectfully request that Chingiskhan Movlaev be granted
release from detention on bond.

30. All these previously named documents that highlight that Petitioner is neither a flight risk
nor a danger to the community were provided to the Respondents, namely to the Counsels of
the Department of Homeland Security responsible for overseeing the appeal.

## **LEGAL BACKGROUND**

31. "'It is well established that the Fifth Amendment entitles [noncitizens] to due process of law
in deportation proceedings.'" *Demore v. Kim*, 538 U.S. 510, 523 (2003) (quoting *Reno v.
Flores*, 507 U.S. 292, 306 (1993)). "Freedom from imprisonment—from government
custody, detention, or other forms of physical restraint—lies at the heart of the liberty" that
the Due Process Clause protects. *Zadvydas v. Davis*, 533 U.S. 678, 690 (2001); *see also id*. at
718 (Kennedy, J., dissenting) ("Liberty under the Due Process Clause includes protection
against unlawful or arbitrary personal restraint or detention."). This fundamental due process
protection applies to all noncitizens, including both removable and inadmissible noncitizens.
*See id.* at 721 (Kennedy, J., dissenting) ("[B]oth removable and inadmissible [noncitizens]
are entitled to be free from detention that is arbitrary or capricious").

32. Due process requires "adequate procedural protections" to ensure that the government's
asserted justification for physical confinement "outweighs the individual's constitutionally
protected interest in avoiding physical restraint." Zadvydas, 533 U.S. at 690 (internal
quotation marks omitted). In the immigration context, the Supreme Court has recognized
only two valid purposes for civil detention—to mitigate the risks of danger to the community
and to prevent flight. Id.; Demore, 538 U.S. at 528.

33. Due process requires that the government provide bond hearings to noncitizens facing

1   prolonged detention. "The Due Process Clause foresees eligibility for bail as part of due

2   process" because "[b]ail is basic to our system of law." *Jennings*, 138 S. Ct. at 862 (Breyer,

3   J., dissenting) (internal quotation marks omitted). While the Supreme Court upheld the

4   mandatory detention of a noncitizen under Section 1226(c) in *Demore*, it did so based on the

5   petitioner's concession of deportability and the Court's understanding at the time that

6   detentions under Section 1226(c) are typically "brief." *Demore*, 538 U.S. at 522 n.6, 528.

7   Where a noncitizen has been detained for a prolonged period or is pursuing a substantial

8   defense to removal or claim to relief, due process requires an individualized determination

9   that such a significant deprivation of liberty is warranted. *Id.* at 532 (Kennedy, J., concurring)

10  ("[I]ndividualized determination as to his risk of flight and dangerousness" may be warranted

11  "if the continued detention became unreasonable or unjustified"); *see also Jackson v. Indiana*, 406

12  U.S. 715, 733 (1972) (holding that detention beyond the "initial commitment" requires additional

13  safeguards); *McNeil v. Dir., Patuxent Inst.*, 407 U.S. 245, 249-50 (1972) (holding that "lesser

14  safeguards may be appropriate" for "short-term confinement"); *Hutto v. Finney*, 437 U.S. 678,

15  685-86 (1978) (holding that, in the Eighth Amendment context, "the length of confinement cannot

16  be ignored in deciding whether [a] confinement meets constitutional standards"); *Reid v. Donelan*,

17  17 F.4th 1, 7 (1st Cir. 2021) (holding that "the Due Process Clause imposes some form of

18  reasonableness limitation upon the duration of detention" under section 1226(c)) (internal

19  quotation marks omitted).

20      **A.**     **Detention That Exceeds Six Months Without A Bond Hearing Is**
21              **Unconstitutional.**

22  34. Detention without a bond hearing is unconstitutional when it exceeds six months. *See*

23      *Demore*, 538 U.S. at 529-30 (upholding only "brief" detentions under Section 1226(c), which

24      last "roughly a month and a half in the vast majority of cases in which it is invoked, and

25      about five months in the minority of cases in which the [noncitizen] chooses to appeal");

26      *Zadvydas*, 533 U.S. at 701 ("Congress previously doubted the constitutionality of detention

27      for more than six months."); *Rodriguez Diaz v. Garland*, 53 F.4th 1189, 1091 (9th Cir. 2022)

28      ("[O]nce the [noncitizen] has been detained for approximately six months, continuing detention

29      becomes prolonged" (cleaned up) (quoting *Diouf v. Napolitano*, 634 F.3d 1081, 1091 (9th Cir.

30      2011))); *Rodriguez v. Nielsen*, Case No. 18-CV-04187-TSH, 2019 WL 7491555, at *6 (N.D.

31      Cal. Jan. 7, 2019) ("[D]etention becomes prolonged after six months and entitles [Petitioner]

32      to a bond hearing").

35. The recognition that six months is a substantial period of confinement—and is the time after which additional process is required to support continued incarceration—is deeply rooted in our legal tradition. With few exceptions, "in the late 18th century in America crimes triable without a jury were for the most part punishable by no more than a six-month prison term." *Duncan v. Louisiana*, 391 U.S. 145, 161 & n.34 (1968). Consistent with this tradition, the Supreme Court has found six months to be the limit of confinement for a criminal offense that a federal court may impose without the protection afforded by jury trial. *Cheff v. Schnackenberg*, 384 U.S. 373, 380 (1966) (plurality opinion). The Court has also looked to six months as a benchmark in other contexts involving civil detention. *See McNeil v. Dir., Patuxent Inst.*, 407 U.S. 245, 249, 250-52 (1972) (recognizing six months as an outer limit for confinement without individualized inquiry for civil commitment). The Court has likewise recognized the need for bright line constitutional rules in other areas of law. *See Maryland v. Shatzer*, 559 U.S. 98, 110 (2010) (holding that 14 days must elapse following invocation of *Miranda* rights before re-interrogation is permitted); *Cnty. of Riverside v. McLaughlin*, 500 U.S. 44, 55-56 (1991) (holding that a probable cause hearing must take place within 48 hours of warrantless arrest).

**B.     Even Absent A Bright-Line Six-Month Standard, An Individualized Bond Hearing Is Required When Detention Becomes Unreasonably Prolonged.**

36. Petitioner's detention, without *any* individualized review, is unreasonable under the *Mathews v. Eldridge* due process test. Alternatively, Petitioner prevails under the multi-factor reasonableness test the Third Circuit adopted in *German Santos v. Warden Pike Correctional Facility*, 965 F.3d 203, 211 (3d Cir. 2020).

37. Each year, thousands of noncitizens are incarcerated for lengthy periods pending the resolution of their removal proceedings. *See Jennings*, 138 S. Ct. at 860 (Breyer, J., dissenting) (observing that class members, numbering in the thousands, had been detained "on average one year" and some had been detained for several years). For noncitizens who have some criminal history, their immigration detention often dwarfs the time spent in criminal custody, if any. *Id.* ("between one-half and two-thirds of the class served [criminal] sentences less than six months").

38. Petitioner faces severe hardships while detained by ICE. Petitioner is held in a locked down facility, with limited freedom of movement and access to Petitioner's family or support

network: "[T]he circumstances of their detention are similar, so far as we can tell, to those in many prisons and jails." *Jennings*, 138 S. Ct. at 861 (Breyer, J., dissenting); *accord Chavez–Alvarez v. Warden York Cnty. Prison*, 783 F.3d 469, 478 (3d Cir. 2015); *Ngo v. INS*, 192 F.3d 390, 397-98 (3d Cir. 1999); *Sopo v. U.S. Att'y Gen.*, 825 F.3d 1199, 1218, 1221 (11th Cir. 2016). "And in some cases the conditions of their confinement are inappropriately poor" including, for example, "invasive procedures, substandard care, and mistreatment, *e.g.*, indiscriminate strip searches, long waits for medical care and hygiene products, and, in the case of one detainee, a multiday lock down for sharing a cup of coffee with another detainee." *Jennings*, 138 S. Ct. at 861 (Breyer, J., dissenting) (citing Press Release, Off. of Inspector Gen., Dept. of Homeland Sec., *DHS OIG Inspection Cites Concerns With Detainee Treatment and Care at ICE Detention Facilities* (Dec. 14, 2017)); *see also* Tom Dreisbach, *Government's own experts found 'barbaric' and 'negligent' conditions in ICE detention*, NPR (Aug. 16, 2023, 5:01 AM) (reporting on the "'negligent' medical care (including mental health care), 'unsafe and filthy' conditions, racist abuse of detainees, inappropriate pepper-spraying of mentally ill detainees and other problems that, in some cases, contributed to detainee deaths" contained in inspection reports prepared by experts from the Department of Homeland Security's Office for Civil Rights and Civil Liberties after examining detention facilities between 2017 and 2019). Individuals at Golden State Annex Detention Facility have described receiving food contaminated with insects (including cockroaches, flies, and spiders), hair, and other foreign objects. *See* California Collaborative for Immigrant Justice*, Starving for Justice: The Denial of Proper Nutrition in Immigration Detention,* at p. 7 (April 2022), *available at* https://www.ccijustice.org/_files/ugd/733055_c43b1cbbdda341b894045940622a6dc3.pdf.   At Mesa Verde Detention Facility, over 80% of detained individuals who responded to one survey said they had received expired food. *Id.*

39. The *Mathews* test for procedural due process claims balances: (1) the private interest threatened by governmental action; (2) the risk of erroneous deprivation of such interest and the value of additional or substitute safeguards; and (3) the government interest. *Mathews v. Eldridge*, 424 U.S. 319, 335 (1976); *see also Salesh P.*, 2022 WL 17082375, at *8 (collecting cases where judges in the Northern District of California applied the *Mathews* factors to a habeas petitioner's due process claims). Here, each factor weighs in Petitioner's favor, requiring this Court to promptly hold a hearing to evaluate whether the government can

1    justify their ongoing detention.

2    40. First, Petitioner indisputably has a weighty interest in their liberty, the core private interest at

3        stake here. *Zadvydas*, 533 U.S. at 690 ("Freedom from imprisonment. . . lies at the heart of

4        the liberty [the Due Process Clause] protects."). Petitioner, who is being held in

5        "incarceration-like conditions," has an overwhelming interest here, regardless of the length

6        of his immigration detention, because "any length of detention implicates the same"

7        fundamental rights. *Rajnish v. Jennings*, No. 3:20-cv-07819-WHO, 2020 WL 7626414, at *6

8        (N.D. Cal. Dec. 22, 2020).

9    41. Second, Petitioner will suffer the erroneous risk of deprivation of their liberty without an

10       individualized evidentiary hearing. The risk of erroneous deprivation of their liberty is high,

11       as they have been detained since September 23, 2023, without any evaluation of whether the

12       government can justify detention under their individualized circumstances. "[T]he risk of an

13       erroneous deprivation of liberty in the absence of a hearing before a neutral decisionmaker is

14       substantial."*Diouf*, 634 F.3d at 1092. Conversely, "the probable value of additional

15       procedural safeguards—an individualized evaluation of the justification for his detention—is

16       high, because Respondents have provided virtually no procedural safeguards at all." *Jimenez*

17       *v. Wolf*, No. 19-cv-07996-NC,2020 WL 510347, *3 (N.D. Cal. Jan. 30, 2020) (granting

18       habeas petition for person who had been detained for one year without a bond hearing).

19   42. Third, the government's interest is very low in continuing to detain Petitioner without

20       providing any neutral review. *See Mathews*, 424 U.S. at 335. The specific interest at stake

21       here is not the government's ability to continue to detain Petitioner, but rather the

22       government's ability to continue to detain them for months on end without any individualized

23       review. *See Marroquin Ambriz v. Barr*, 420 F. Supp. 3d 953, 964 (N.D. Cal. 2019);

24       *Henriquez v. Garland*, No. 5:22-CV-00869-EJD, 2022 WL 2132919, at *5 (N.D. Cal. June

25       14, 2022). The cost of providing an individualized inquiry is minimal. *See Henriquez*, 2022

26       WL 2132919, at *5. The government has repeatedly conceded this fact. *See Lopez Reyes v.*

27       *Bonnar*, 362 F. Supp. 3d 762, 777 (N.D. Cal. 2019); *Singh v. Barr*, 400 F. Supp. 3d 1005,

28       1021 (S.D. Cal. 2019); *Marroquin Ambriz*, 420 F. Supp. 3d at 964.

29   43. In sum, the *Mathews* factors establish that Petitioner is entitled to an evidentiary hearing

30       before a neutral adjudicator. Unsurprisingly, courts applying these standards in this District

31       and Circuit have repeatedly held that prolonged detention without a hearing before a neutral

adjudicator violates procedural due process for individuals who were held under the same detention statute. See, e.g., *Romero Romero v. Wolf*, No. 20-CV-08031-TSH, 2021 WL 254435, at *2, *5 (N.D. Cal. Jan. 26, 2021) (holding that the petitioner's detention under § 1226(c) of just over one year without a custody hearing was "not compatible with due process" and granting habeas); *Jimenez*, 2020 WL 510347, at *1, *2, *4 (holding that the petitioner's detention under § 1226(c) of just over one year without a custody hearing violated his due process rights and granting habeas); *Gonzalez v. Bonnar*, No. 18-CV-05321-JSC, 2019 WL 330906, at *1, *5 (N.D. Cal. Jan. 25, 2019) (holding that the petitioner's detention under § 1226(c) for just over one year without a custody hearing violates his due process rights and granting habeas). This Court should so hold as well.

44. *Rodriguez Diaz v. Garland*, 53 F.4th 1189 (9th Cir. 2022), does not disturb this result. In *Rodriguez Diaz*, the Ninth Circuit applied the *Mathews* test to hold that the detention of a noncitizen detained under a different detention statute, 8 U.S.C. § 1226(a), did not violate procedural due process. 53 F.4th at 1195. Unlike § 1226(c), § 1226(a) mandates that detained individuals receive an individualized bond hearing at the outset of detention and provides for further bond hearings upon a material change in circumstances. *See* 8 C.F.R. § 1003.19€. The panel's decision in *Rodriguez Diaz* was predicated on the immediate and ongoing availability of this administrative process under § 1226(a). 53 F.4th at 1202 ("Section 1226(a) and its implementing regulations provide extensive procedural protections that are unavailable under other detention provisions        "). Unlike the petitioner in *Rodriguez Diaz*, Petitioner has no statutory access to individualized review of his detention.

45. Alternatively, courts that apply a reasonableness test have considered four non-exhaustive factors in determining whether detention is reasonable. *German Santos v. Warden Pike Cnty. Corr. Facility*, 965 F.3d 203, 210-22 (3d Cir. 2020). The reasonableness inquiry is "highly fact-specific." *Id.* at 210. "The most important factor is the duration of detention." *Id.* At 211; *see also Gonzalez v. Bonnar*, No. 18-CV-05321-JSC, 2019 WL 330906, at *1, *5 (N.D. Cal. Jan. 25, 2019) (concluding that the petitioner's detention under § 1226(c) for just over one year without a custody hearing weighed strongly in favor of finding detention unreasonable, and violated his due process rights and granting habeas). Duration is evaluated along with "all the other circumstances," including (1) whether detention is likely to continue, (2) reasons for the delay, and (3) whether the conditions of confinement are meaningfully different from criminal punishment. *Id.* at 211.

46. As noted, Petitioner has been detained **for more than 10 months**, *supra* ¶ 20 and Petitioner's detention is likely to continue as Petitioner asserts their right to seek immigration relief, *supra* ¶ 19. Noncitizens should not be punished for pursuing "legitimate proceedings" to seek relief. *See Masood v. Barr*, No. 19-CV-07623-JD, 2020 WL 95633, at *3 (N.D. Cal. Jan. 8, 2020) ("[I]t ill suits the United States to suggest that [Petitioner] could shorten his detention by giving up these rights and abandoning his asylum application."). Thus, courts should not count a continuance against the noncitizen when they obtained it in good faith to prepare their removal case, including efforts to obtain counsel. *See Hernandez Gomez*, 2023 WL 2802230, at *4 ("The duration and frequency of these requests [for continuances] do not diminish his significant liberty interest in his release or his irreparable injury of continued detention without a bond hearing."). Moreover, Petitioner's confinement and experiences at a facility operated by a private, for-profit prison contractor, demonstrate that their conditions of confinement are not meaningfully different from those of criminal punishment. *See supra* ¶¶ 10, 24, 32.

    **C.    At Any Hearing, The Government Must Justify Ongoing Detention By Clear And Convincing Evidence.**

47. At a bond hearing, due process requires certain minimum protections to ensure that a noncitizen's detention is warranted: the government must bear the burden of proof by clear and convincing evidence to justify continued detention, taking into consideration available alternatives to detention; and if the government cannot meet its burden, the noncitizen's ability to pay a bond must be considered in determining the appropriate conditions of release.

48. To justify prolonged immigration detention, the government must bear the burden of proof by clear and convincing evidence that the noncitizen is a danger or flight risk. *See Singh v. Holder*, 638 F.3d 1196, 1203 (9th Cir. 2011); *Aleman Gonzalez v. Barr*, 955 F.3d 762, 781 (9th Cir. 2020), *rev'd on other grounds by Garland v. Aleman Gonzalez*, 142 S. Ct. 2057, 213 L. Ed. 2d 102 (2022) ("*Jennings*'s rejection of layering [the clear and convincing burden of proof standard] onto § 1226(a) *as a matter of statutory construction* cannot . . . undercut our constitutional due process holding in *Singh*."); *Doe v. Garland*, No. 3:22-CV- 03759-JD, 2023 WL 1934509, at *2 (N.D. Cal. Jan. 10, 2023) (applying *Singh* and holding that the government shall bear the burden in a constitutionally required bond hearing in the § 1226(c) context); *Pham v. Becerra*, No. 23-CV-01288-CRB, 2023 WL 2744397, at *7 (N.D. Cal. Mar. 31, 2023) (same); *Hernandez Gomez v. Becerra*, No. 23-CV-01330-WHO, 2023 WL

2802230, at *4 (N.D. Cal. Apr. 4, 2023) (same); *Martinez Leiva v. Becerra*, No. 23-CV-02027- CRB, 2023 WL 3688097, at *9 (N.D. Cal. May 26, 2023); *I.E.S. v. Becerra*, No. 23-CV-03783-BLF, 2023 WL 6317617, at *10 (N.D. Cal. Sept. 27, 2023) (same); *Singh Grewal v. Becerra,* No. 23-CV-03621-JCS, 2023 WL 6519272, at *8 (N.D. Cal. Oct. 4, 2023) (same); *omez v. Becerra*, No. 23-CV-03724-JCS, 2023 WL 6232236, at *9 (N.D. Cal. Sept. 25, 2023) (same); *Henriquez v. Garland*, No. 23-CV-01025-AMO, 2023 WL 6226374, at *4 (N.D. Cal. Sept. 25, 2023) (same); *Rodriguez Picazo v. Garland*, No. 23-CV-02529-AMO, 2023 WL 5352897, at *7 (N.D. Cal. Aug. 21, 2023) (same).

49. Where the Supreme Court has permitted civil detention in other contexts, it has relied on the fact that the Government bore the burden of proof by at least clear and convincing evidence. *See United States v. Salerno*, 481 U.S. 739, 750, 752 (1987) (upholding pre-trial detention after a "full-blown adversary hearing" requiring "clear and convincing evidence" and "a neutral decisionmaker"); *Foucha v. Louisiana*, 504 U.S. 71, 81-83 (1992) (striking down civil detention scheme that placed burden on the detainee); *Zadvydas*, 533 U.S. at 692 (finding post-final-order custody review procedures deficient because, *inter alia*, they placed burden on detainee).

50. The requirement that the government bear the burden of proof by clear and convincing evidence is also supported by application of the three-factor balancing test from *Mathews v. Eldridge*, 424 U.S. 319, 335 (1976). First, "an individual's private interest in 'freedom from prolonged detention' is 'unquestionably substantial.'" *See Rodriguez Diaz*, 53 F.4th at 1207 (citing *Singh*, 638 F.3d at 1208). Second, the risk of error is great where the government is represented by trained attorneys and detained noncitizens are often unrepresented and may lack English proficiency. *See Santosky v. Kramer*, 455 U.S. 745, 763 (1982) (requiring clear and convincing evidence at parental termination proceedings because "numerous factors combine to magnify the risk of erroneous factfinding" including that "parents subject to termination proceedings are often poor, uneducated, or members of minority groups" and "[t]he State's attorney usually will be expert on the issues contested"). Moreover, detained noncitizens are incarcerated in prison-like conditions that severely hamper their ability to obtain legal assistance, gather evidence, and prepare for a bond hearing. *See supra* ¶ 32. Third, placing the burden on the government imposes minimal cost or inconvenience to it, as the government has access to the noncitizen's immigration records and other information that it can use to make its case for continued detention.

1         **D.**        **Due Process Requires Consideration Of Alternatives To Detention.**

2    51. Due process also requires consideration of alternatives to detention. The primary purpose of

3         immigration detention is to ensure a noncitizen's appearance during civil removal

4         proceedings. *Zadvydas*, 533 U.S. at 697. Detention is not reasonably related to his purpose if

5         there are alternative conditions of release that could mitigate risk of flight. *See Bell v.*

6         *Wolfish* 441 U.S. 520, 538–39 (1979) (civil pretrial detention may be unconstitutionally

7         punitive if it is excessive in relation to its legitimate purpose). ICE's alternatives to detention

8         program—the Intensive Supervision Appearance Program—has achieved extraordinary

9         success in ensuring appearance at removal proceedings, reaching compliance rates close to

10        100 percent. *Hernandez v. Sessions*, 872 F.3d 976, 991 (9th Cir. 2017) (observing that ISAP

11        "resulted in a 99% attendance rate at all EOIR hearings and a 95% attendance rate at final

12        hearings"). Thus, alternatives to detention must be considered in determining whether

13        prolonged incarceration is warranted.

14    52. Due process likewise requires consideration of a noncitizen's ability to pay a bond.

15         "Detention of an indigent 'for inability to post money bail' is impermissible if the individual's

16         'appearance at trial could reasonably be assured by one of the alternate forms of release.'"

17         *Hernandez*, 872 F.3d at 990 (quoting *Pugh v. Rainwater*, 572 F.2d 1053, 1058 (5th Cir. 1978)

18         (en banc)). Therefore, when determining the appropriate conditions of release for people

19         detained for immigration purposes, due process requires "consideration of financial

20         circumstances and alternative conditions of release." *Id*.; *see also Martinez v. Clark*, 36 F.4th

21         1219, 1231 (9th Cir. 2022) ("While the government had a legitimate interest in protecting the

22         public and ensuring the appearance of noncitizens in immigration proceedings, we held [in

23         *Hernandez*] that detaining an indigent alien without consideration of financial circumstances

24         and alternative release conditions was 'unlikely to result' in a bond determination

25         'reasonably related to the government's legitimate interests.' (citation omitted).").

26                             **CLAIM FOR RELIEF**

27       **VIOLATION OF THE DUE PROCESS CLAUSE OF THE FIFTH AMENDMENT TO**

28                     **THE U.S. CONSTITUTION**

29

30    53. Petitioner re-alleges and incorporates by reference the paragraphs above.

54. The Due Process Clause of the Fifth Amendment forbids the government from depriving any "person" of liberty "without due process of law." U.S. Const. amend. V.

55. To justify Petitioner's ongoing prolonged detention, due process requires that the government establish at an individualized hearing before a neutral decisionmaker that Petitioner's detention is justified by clear and convincing evidence of flight risk or danger, taking into account whether alternatives to detention could sufficiently mitigate that risk.

56.  For these reasons, Petitioner's ongoing prolonged detention without a hearing violates due process.

## **PRAYER FOR RELIEF**

WHEREFORE, Petitioner respectfully requests that this Court:

1.  Assume jurisdiction over this matter;

2.  Issue a Writ of Habeas Corpus, hold a hearing before this Court if warranted, determine that Petitioner's detention is not justified because the government has not established by clear and convincing evidence that Petitioner presents a risk of flight or danger in light of available alternatives to detention, and order Petitioner's release (with appropriate conditions of supervision if necessary), taking into account Petitioner's ability to pay a bond;

3.  In the alternative, issue a Writ of Habeas Corpus and order Petitioner's release within 30 days unless Respondents schedule a hearing before an immigration judge where: (1) to continue detention, the government must establish by clear and convincing evidence that Petitioner presents a risk of flight or danger, even after consideration of alternatives to detention that could mitigate any risk that Petitioner's release would present; and (2) if the government cannot meet its burden, the immigration judge shall order Petitioner's release on appropriate conditions of supervision, taking into account Petitioner's ability to pay a bond;

4.  Issue a declaration that Petitioner's ongoing prolonged detention violates the Due Process Clause of the Fifth Amendment;

5.  Award Petitioner his costs and reasonable attorneys' fees in this action as provided for by the Equal Access to Justice Act, 28 U.S.C. § 2412; and

6.  Grant such further relief as the Court deems just and proper.

1    Dated: 08/11/2024                                    Respectfully submitted,

2                                                         *Jacob Shidaev*

3                                                         Jacob Shidaev, Esq. (SBN:343616)

4                                                         LAW OFFICES OF JACOB SHIDAEV

5                                                         15250 Ventura Blvd, Suite PH 1220

6                                                         Sherman Oaks, CA 91403
7                                                         jacob@shidaev.com

8                                                         Tel: (424) 558-4141

9                                                         Fax: (818) 273-5131

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

CERTIFICATE OF SERVICE

I hereby certify that on 08/11/2024, I served a copy of the foregoing HABEAS CORPUS PETITION on the following parties by:

☐   US mail
☐   Hand delivery
☒   electronic filing

Date: 08/11/2024

Respectfully submitted,

*Jacob Shidaev*

Jacob Shidaev, Esq. (SBN: 343616)
LAW OFFICES OF JACOB SHIDAEV
15250 Ventura Blvd, Suite PH 1220
Sherman Oaks, CA 91403
jacob@shidaev.com
Tel: (424) 558-4141
Fax: (818) 273-5131